IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
(Roanoke Division)

| | |
|---|---|
| JACK DOE,<br><br> Plaintiff,<br><br>v.<br><br>VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, TIMOTHY SANDS, ANGELA D. SIMMONS, KATIE REARDON POLIDORO, ROHSAAN SETTLE, KATIE BYLENGA, CAROLINE GREEN, AND ANTHONY SCOTT *employees of Virginia Polytechnic Institute and State University, sued in his or her official and individual capacity, jointly and severally,*<br><br> Defendants. | Civil Action No. 7:18cv492 |

## COMPLAINT

Plaintiff Jack Doe[1] files this complaint against Defendants Virginia Polytechnic Institute and State University, Timothy Sands, Angela D. Simmons, Katie Reardon Polidoro, Rohsaan Settle, Katie Bylenga, Caroline Green, and Anthony Scott for gender-based discrimination in violation of Title IX of the

---

[1] "Jack Doe" is not the Plaintiff's real name. Due to the nature of the allegations in this lawsuit, Mr. Doe will promptly move this Court for permission to proceed under a pseudonym to protect his privacy because of fear of retaliation. Moreover, to protect the identity of his accuser, he is identifying him as "Ronald Roe." In using a pseudonym, Mr. Doe relies upon the factors set out in *Co. Doe v. Pub. Citizen*, 74. F.3d 246 (4th Cir. 2014).

1

Education Amendments of 1972 (20 U.S.C. § 1681 *et seq.*), violations of his rights under the due process and equal protection requirements of the Fourteenth Amendment to the United States Constitution, the Virginia Constitution, breach of contract, and other state law causes of action. In support of this complaint, Jack Doe states as follows:

## THE PARTIES AND JURISDICTION

1. Plaintiff Jack Doe ("Mr. Doe") is, and at all times relevant to this Complaint has been, a resident of Virginia. He was a student at Virginia Polytechnic Institute and State University (the "University" or "Virginia Tech") from Fall 2015 until October 11, 2016.

2. Defendant Virginia Tech is a public land-grant research university with its principal place of business located in the Commonwealth of Virginia.

3. Defendant Timothy Sands is or was at the pertinent times the President of the University and resides in Virginia.

4. Defendant Angela D. Simmons is or was a pertinent times the Assistant Vice-President for Student Affairs for the University and resides in Virginia.

5. Defendant Katie Reardon Polidoro is or was at pertinent times the Title IX Investigator and Gender Based Violence Prevention Specialist for the University and resides in Virginia.

6. Defendant Rohsaan Settle is or was at pertinent times the Student Conduct Director for the University and resides in Virginia.

7. Defendant Katie Bylenga is or was at pertinent times the Student Conduct Assistant Director for the University and resides in Virginia.

8. Defendant Caroline Green is or was at pertinent times a Student Conduct Officer for the University and resides in Virginia.

9. Defendant Anthony Scott is or was at pertinent times the Assistant Dean of Students for the University and resides in Virginia.

10. The Court has federal question and supplemental jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because: (i) the federal law claims arise under the United States Constitution, brought pursuant to 42 U.S.C. § 1983, and under the laws of the United States, including Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88; and, (ii) the state law and common law claims are so closely related to the federal law claims as to form the same case or controversy under Article III of the United States Constitution.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

11. Mr. Doe enrolled as a first year Ph.D. student at Virginia Tech and matriculated in the fall semester of 2015. Beginning at that time and continuing through the events giving rise to this action, Mr. Doe paid tuition to attend the University.

## THE INCIDENT

12. Ronald Roe ("Mr. Roe") falsely accused Mr. Doe of sexually assaulting him in the late evening of August 29, 2015 or early morning of August 30, 2015.

13. Mr. Doe and Mr. Roe met each other on or about July 28, 2015 while Mr. Doe was moving into his new apartment.

14. In July 2015, Mr. Doe and Mr. Roe began building a rapport around their shared Ph.D. program and went to university and social events together.

15. Mr. Doe is a gay man and Mr. Roe purports to be a straight man but talked extensively to Mr. Doe about the size of his genitalia and his sexual habits.

16. On August 29, 2015, Mr. Roe invited Mr. Doe to meet him for drinks.

17. Mr. Doe advised Mr. Roe he was unable to do so because of financial hardship.

18. Mr. Roe then offered to pay for Mr. Doe's food and drink purchases, and Mr. Doe agreed. The two had drinks at various bars that evening.

19. During the evening, Mr. Roe alternated between drinking alcohol and water, but continued to buy drinks for Mr. Doe.

20. At the end of the evening or during the early morning hours, Mr. Doe became ill and vomited.

21. Mr. Roe insisted on accompanying Mr. Doe back to his apartment.

22. Upon arrival at Mr. Doe's apartment, Mr. Doe told Mr. Roe he could sleep on the couch, gave him a pillow and advised him that the blankets were in the closet.

23. Mr. Doe partially underdressed and got into his bed.

24. Mr. Roe removed all his clothing except his underwear and then proceeded, uninvited, to get into bed with Mr. Doe.

25. Mr. Roe then asked Mr. Doe to cuddle with him and Mr. Doe acquiesced.

26. Mr. Roe and Mr. Doe mutually engaged in genital stimulation.

27. Mr. Doe eventually ceased physical contact when Mr. Roe stated that he did not normally do such things.

28. Mr. Doe and Mr. Roe laughed about that comment and then went to sleep.

29. The next morning, Mr. Roe woke Mr. Doe when he was laughing about being unable to find his shoes. Mr. Doe offered to drive Mr. Roe back to his car, but Mr. Roe declined and left to meet a friend.

30. Mr. Doe and Mr. Roe continued communicating with one another after the incident via Facebook and texting, including jokes about class and invitations to study, cook dinner, and hang out together.

31. Mr. Roe asked Mr. Doe if he'd like to come and watch him have sex with a girl with whom he had a date. Mr. Doe declined.

## THE INVESTIGATION

### I. The Disciplinary Proceeding

32. On July 27, 2016, Mr. Doe was informed by an email from Katie Reardon Polidoro ("Polidoro"), Title IX Investigator & Gender-Based Violence Prevention Specialist, that she had been given a confidential notice that he may have been involved in an incident of alleged sexual assault against Mr. Roe. The email did not identify the date or location of the alleged incident, or the alleged policy violation. The letter informed Mr. Doe that he was to have no further contact with Mr. Roe.

33. Polidoro, in her Title IX Investigator capacity, conducted an investigation into the allegations.

5

34. The investigation lasted approximately two and a half months. Over the course of the investigation, Polidoro interviewed witnesses, including Mr. Doe and Mr. Roe, about the incident.

35. Mr. Roe did not provide a written statement to Polidoro regarding the alleged incident.

36. Mr. Doe provided Polidoro with the names and contact information for at least four witnesses. Polidoro never contacted those witnesses as part of her investigation.

37. Mr. Doe was appointed an advisor for the investigation and hearing process, Mr. Anthony Scott ("Scott"), the Associate Dean of Students at the time. Mr. Doe was told that he could select someone else, but that it would be more beneficial to have someone familiar with the process.

38. Mr. Scott advised Mr. Doe throughout the disciplinary proceedings.

39. Following the investigation, Mr. Doe was notified on September 12, 2016, at his pre-hearing meeting with Caroline Green that the University wanted to set the conduct hearing on September 14, 2016. This did not provide Mr. Doe with sufficient time to prepare his defense.

40. Further, on September 12, 2016 at his pre-hearing meeting, Mr. Doe became aware that he was accused of two additional violations, alcoholic beverage and disorderly or disruptive conduct charges and that his initial charge had been changed from a sexual assault charge to a sexual battery charge.

41. Ms. Green insisted that the hearing take place on the September 14th despite information from Mr. Doe concerning his registered disability with the school and ongoing mental health issues.

42. Both Mr. Doe and Mr. Roe were present at the hearing on September 14, 2016. Mr. Roe and Caroline Green were present via Skype; Mr. Doe, hearing officers Rohsaan Settle ("Settle") and Katie Bylenga ("Bylenga"), Mr. Doe's advisor, Anthony Scott, Associate Dean of Students, and Polidero were present in person.

43. During the hearing, Polidoro outlined her investigation. Mr. Roe and Mr. Doe were then allowed to ask Polidoro questions pertaining to the investigation. The questions had to be posed to Settle and Bylenga who would then rephrase the question to Polidoro. The questions asked could be for clarification purposes only and could not be asked to prove a point or address a discrepancy. This process failed to provide Mr. Doe with the opportunity he needed to confront and question the adverse witnesses against him.

44. During the hearing Polidoro admitted that her investigation report included her paraphrasing and her own perception of witness statements as she did not record any of those statements contemporaneously.

45. Next, Mr. Roe and Mr. Doe were given the opportunity to ask each other questions, through Settle and Bylenga. Again, these questions had to be for clarification purposes only.

46. At the conclusion of the hearing, Mr. Doe and Mr. Roe were informed that they would be notified about the results. Mr. Doe requested to be notified in writing.

47. The hearing officers used a preponderance of the evidence standard even though the offenses were quasi-criminal in nature, which should have required, at the least, a clear and convincing evidence standard for the burden of proof.

## II. Decision & Sanctions

48. On September 15, 2016, Mr. Doe received a letter from Student Conduct, signed by Settle and Bylenga, informing him that he had been found responsible for two violations of the Code.

49. Mr. Doe was found responsible for violating the Sexual Violence – Sexual Battery and Alcoholic Beverage policies.

50. As a result of these findings, Mr. Doe was suspended from the University until Summer Session 1, 2017.

51. The notice also included information regarding the appeals process.

## III. Appeal of the Sanction

52. According to the University's policy, a student may appeal a decision based on a violation of a procedural guarantee, significant and relevant new information, and/or unduly harsh and/or arbitrary sanction(s).

53. Per the Virginia Tech policy, on September 23, 2016 Mr. Doe appealed the finding of responsibility and the sanction on all three grounds.

54. In his appeal Mr. Doe emphasized the numerous due process violations that occurred during the investigation and at the hearing and provided new evidence to further clear his name. He argued that the sanction was unduly harsh in comparison to similar complaints heard by the Student Conduct Council.

55. On October 11, 2016, Mr. Doe received a letter from Angela D. Simmons, Ed.D., Assistant Vice President for Student Affairs, informing him that there was insufficient cause to reverse the decision made by the hearing officers and that the sanction imposed was deemed to be appropriate, finalizing the internal student conduct review process.

## COUNT I - VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983

56. Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

57. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of the law."

58. Virginia students at public post-secondary schools, like Virginia Tech, have a liberty and/or property interest in their educations, which is protected by the Fourteenth Amendment's Procedural Due Process Clause.

59. Mr. Doe has a liberty interest in his good name, reputation, honor, and integrity which is protected by the Fourteenth Amendment's Procedural Due Process Clause.

60. Because of Mr. Doe's various liberty and property interests protected by the Procedural Due Process Clause of the Fourteenth Amendment, Virginia Tech was obligated to provide him with a fundamentally fair and unbiased disciplinary process before punishing him for alleged misconduct.

61. Virginia Tech was required to afford Mr. Doe proper notice of the allegation against him and a meaningful opportunity to be heard and to defend himself.

62. The University denied Mr. Doe's due process rights when it failed to perform a thorough and impartial investigation, failed to provide Mr. Doe with a meaningful opportunity to confront Mr. Roe and the witnesses, failed to allow Mr. Doe proper notice to obtain outside counsel as his advisor, and disregarded Mr. Doe's exculpatory evidence, all while favoring Mr. Roe's unsubstantiated and unreliable accusations.

63. The University used an improper standard of proof due to the quasi-criminal nature of the offenses. The standard should have been clear and convincing evidence, at least.

64. Mr. Doe was suspended from Virginia Tech until Summer Session 1, 2017 as a result of the biased and unjust investigation process, unfairly delaying his education.

65. The finding of responsibility and suspension will taint Mr. Doe's student record, which will follow him throughout any other educational or employment opportunities.

66. As a result of these due process violations, Mr. Doe was suspended until Summer Session 1, 2017 and suffers ongoing harm to his reputation and numerous damages. He was unable to enroll in classes, was significantly delayed in completing his degree, and is marred by an erroneous record on his transcript that will severely affect future educational and employment opportunities.

WHEREFORE, plaintiff Jack Doe prays judgment as hereinafter set forth.

## COUNT II – VIOLATION OF THE DUE PROCESS CLAUSE OF THE VIRGINIA CONSTITUTION

67. Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

68. The Virginia Constitution states that "no person shall be deprived of his life, liberty, or property interests without due process of law." Va. Const. art. I, § 11.

69. For the reasons stated under Count I, the University deprived Mr. Doe of various liberty and property interests without due process of law.

70. Accordingly, all Defendants are liable to Mr. Doe for violations of the Virginia Constitution and Defendants Polidoro, Settle and Bylenga are, liable in their personal capacities, for all damages arising out of those violations.

## COUNT III – VIOLATION OF TITLE IX (20 U.S.C. § 1681 *et seq.*)

71. Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

72. Virginia Tech receives federal funding, including in the form of federal student loans given to students, and is subject to the provisions of Title IX.

73. Title IX prohibits gender discrimination in the educational setting.

74. Virginia Tech erroneously found Mr. Doe responsible for sexual battery. Indeed, he is innocent of the allegation.

75. Ms. Polidoro disregarded Mr. Doe's statements, failed to investigate evidence that would have exculpated him of the alleged offenses, and gave preference to the

implausible and inconsistent statements of Mr. Roe because bias against Mr. Doe because he is a homosexual male.

76. Ms. Polidoro also gave no weight to the apparent inconsistencies between Mr. Doe and Mr. Roe's recollections of the alleged incident, instead choosing to treat Mr. Roe's account as wholly accurate and reliable.

77. The serious and deliberate procedural shortcomings in the investigation and adjudication of the allegations against Mr. Doe prevented him from fully defending himself.

78. Moreover, Virginia Tech initiated its investigation in the shadow of (1) Office of Civil Rights ("OCR") investigations into how colleges and universities handle allegations of sexual assault; and, (2) innumerable reports covered in the national media that suggest the pervasive nature of sexual assault committed by male students on college campuses throughout the nation. As a reaction to the scrutiny of these OCR investigations and national stories, and in order to be perceived as aggressively addressing the perceptions that sexual assault is rampant on college and university campuses, Virginia Tech treats male students accused of sexual misconduct more aggressively than it otherwise would, and more aggressively than it would treat similar complaints against female students.

79. Virginia Tech has engaged in a pattern of unfair investigations and adjudications resulting in serious sanctions being imposed on male students, while not making comparable efforts with respect to allegations of sexual violence and abusive conduct made against female students.

80. Here, the decision erroneously finding Mr. Doe responsible for the alleged sexual misconduct was motivated by gender bias against accused male students.

WHEREFORE, plaintiff Jack Doe prays judgement against Defendant Virginia Tech as hereinafter set forth.

## COUNT IV – NEGLIGENCE

81. Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

82. In its interactions with Mr. Doe and in conducting its investigation and adjudication of Mr. Roe's complaint, the University owed a duty to Mr. Doe to exercise reasonable care, with due regard for the truth, established policies and procedures, and the important and irreversible consequences of its actions.

83. The University also owed a duty to Mr. Doe to take care in hiring and providing proper training for all faculty and staff members who would interact with Mr. Doe, to ensure that they understood the requirements of Title IX and the University policies and procedures and would protect Mr. Doe's due process rights as they conducted an impartial investigation.

84. Such duties arise from the obligations delineated in the University's own policies and procedures and directives issued by the U.S. Department of Education's Office for Civil Rights.

85. Ms. Polidoro negligently failed to fairly and adequately investigate the allegations and gather the information required to reach an informed conclusion concerning accountability.

13

86. Virginia Tech, acting through its agents and employees, breached a duty to Mr. Doe by carelessly, improperly, and negligently performing its assigned duties, mischaracterizing the truth, and facilitating a process that violated Mr. Doe's constitutionally protected rights and interests.

87. As a direct and proximate result of the University's negligence and breach of duty, Mr. Doe suffered loss of educational opportunities, loss of income, and other future financial losses caused by his suspension. Further, the mark on his student record significantly delayed Mr. Doe's ability to enroll in another university and to pursue his desired degree program and will have a lasting impact on his ability to find employment in his field of choice.

88. As a further direct and proximate result of the University's negligence, carelessness, and breach of duty, Mr. Doe suffered and will continue to suffer from mental and emotional injuries for which compensation is warranted.

WHEREFORE, plaintiff Jack Doe prays judgment as hereinafter set forth.

## COUNT V – BREACH OF CONTRACT

89. Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

90. Mr. Doe paid the University sums of money for his education, and in return, the University contracted to provide Mr. Doe with access to its Ph.D. graduate degree program.

91. Mr. Doe's enrollment in, and attendance of, classes at Virginia Tech, as opposed to another educational institution, created in Mr. Doe an expectation that

he would be allowed to continue his course of study until he earned his degree from the University, provided that he maintained satisfactory grades and complied with University rules and polices.

92. Accordingly, an implied contractual relationship exists between Mr. Doe and the University, under which each party owes the other certain duties.

93. Under the implied contract between Mr. Doe and Virginia Tech, Virginia Tech has a duty not to suspend or expel Mr. Doe for disciplinary misconduct arbitrarily, capriciously, maliciously, discriminatorily, or otherwise in bad faith.

94. The University breached these contractual obligations by suspending Mr. Doe for sexual misconduct through an investigative and adjudicative process that—in the ways, and for the reasons, set out above—was arbitrary, capricious, malicious, discriminatory, and conducted in bad faith.

95. As a direct and proximate result of this breach, an erroneous finding that Mr. Mr. Doe committed sexual assault has been made part of Mr. Doe's educational records, which may be released to educational institutions and employers to whom Mr. Doe applies, substantially limiting his ability to gain acceptance to graduate school, or to secure future employment.

96. Accordingly, Virginia Tech is liable to Mr. Doe for breach of contract and for all damages arising therefrom.

WHEREFORE, plaintiff Jack Doe prays judgment as hereinafter set forth.

## COUNT VI – BREACH OF DUTIES OWED UNDER THE LAW OF ASSOCIATIONS

15

97. Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

98. In conducting its investigation and adjudication of Mr. Roe's complaint against Mr. Doe, Virginia Tech owed Mr. Doe a common law duty under the law of associations not to suspend him for sexual misconduct on a record that was devoid of evidence to support the charge.

99. Acting through its agents, servants and/or employees, Virginia Tech breached this duty by finding Mr. Doe responsible for sexual battery based on factual findings which were wrong.

100. In conducting its investigation and adjudication of Mr. Roe's complaint against Mr. Doe, Virginia Tech owed Mr. Doe a common law duty under the law of associations to follow its policies and procedures—including the University's Title IX Policy and Hokie Handbook.

101. Acting through its agents, servants and/or employees, Virginia Tech breached this duty by failing to follow the Title IX Policy and Hokie Handbook in several material respects, including (1) refusing to even make an effort to obtain certain relevant evidence, including statements from witnesses identified by Mr. Doe, (2) failing to obtain a written statement concerning the incident from Mr. Roe, and (3) failing to investigate relevant evidence and the inconsistencies between Mr. Doe and Mr. Doe's incident accounts as required to reach an informed conclusion.

102. As a direct and proximate result of Virginia Tech's breach of these duties, Mr. Doe's education was unnecessarily and wrongfully delayed for a year; Mr. Doe has

16

endured extreme emotional and psychological suffering; his academic records will reflect the erroneous finding that he committed sexual assault; he will be handicapped in gaining acceptance to other educational institutions; and he will be handicapped in securing employment.

103. Accordingly, Defendant Virginia Tech is liable to Mr. Doe for its violations of duties owed under the law of associations, and for all damages arising out of such violations.

WHEREFORE, plaintiff Jack Doe prays judgment as hereinafter set forth.

## COUNT VII – LEGAL MALPRACTICE

104. Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

105. Mr. Anthony Scott ("Scott") was appointed as Mr. Doe's advisor for the investigation process.

106. Scott was the Assistant Dean of Students at the time.

107. According to the Virginia Tech staff directory, Scott has a Juris Doctorate but he is not licensed to practice law in Virginia.

108. Scott advised and counseled Mr. Doe concerning his investigation, hearing, and appeal process and gave Mr. Doe advice and how to respond to the charges and investigations. Most of the advice that he provided Mr. Doe was wrong and harmful.

109. For instance, Scott advised Mr. Doe to meet with Polidoro alone to give his statement, without an advocate or lawyer, even though the statements made by Mr.

17

Doe at that meeting could have been used against him not only at a student conduct hearing, but also in criminal proceedings.

110. Scott advised Mr. Doe on the procedures and rules at the conduct hearing. He also advised Mr. Roe on the proper strategies and demeanor to pursue at that hearing. He even interrupted Mr. Doe during his closing arguments and told him not to focus on his fact based arguments but rather to speak emotionally.

111. The advice provided by Mr. Scott was harmful to Mr. Doe and was one of the causes of the finding of responsibility by Virginia Tech.

112. As the Assistant Dean of Students, and employee of Virginia Tech, Scott had a conflict of interest representing a student charged with a violation of the Student Code of Conduct.

113. The Virginia Rules of Professional Conduct, Rule 1.7, states "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest."

114. Scott is s a law school graduate and was or should have been well aware of the existing conflict of interest given his position with the University and his expected role as Mr. Doe's advocate in University disciplinary proceedings.

115. The Virginia Rules of Professional Conduct, Rule 5.5(c), states "A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction."

116. Scott, a lawyer even though not barred in Virginia, was offering legal advice to Mr. Doe in a quasi-criminal proceeding.

117. Scott's conduct violated both 1.7 and 5.5(c) of the Virginia Rules of Professional Conduct, and as a result Mr. Doe was de facto denied his right to have an advisor for the disciplinary proceedings.

WHEREFORE, plaintiff Jack Doe prays judgment as hereinafter set forth.

## COUNT VIII – DECLARATORY JUDGMENT

118. Mr. Doe incorporates all other paragraphs in this complaint, as though fully set forth in this count.

119. Virginia Tech violated Mr. Doe's due process rights when it conducted a biased investigation, disregarded Mr. Doe's witnesses and evidence, and allowed Mr. Roe's information and allegations, which were refutable and marred by alcohol blackout, to go virtually uninvestigated.

WHEREFORE, plaintiff Jack Doe prays that judgement be entered in his favor for:

(1) compensatory and punitive damages in an amount to be determined at trial;

(2) a permanent injunction (a) restraining Virginia Tech, and all those acting in consort with Virginia Tech, from continuing to enforce any punishment against him and from making any notation on his transcript or keeping any record relating to his disciplinary hearing in Mr. Doe's education records, and (b) ordering that Virginia Tech rescind and expunge the sanctions entered against him by Virginia Tech;

(3) a declaration that (a) the University violated Mr. Doe's due process rights and its actions were motivated purely by gender, and (b) Mr. Doe was unjustly sanctioned by Virginia Tech;

(4) costs, including attorneys' fees under Title IX and 42 U.S.C. § 1983, and such further relief as is just and equitable.

DATED: October 09, 2018

Respectfully submitted,

By: _____
Harvey & Binnall, PLLC
Jesse R. Binnall
Sarah E. York
717 King Street, Suite 300
Alexandria, VA 22314
Telephone: (703) 888-1943
Facsimile: (703) 888-1930
Email: jbinnall@harveybinnall.com
       syork@harveybinnal.com

20